President of the United States, Mr. Watson for the amicus curiae, and Mr. Coleman for the appellate. Good morning, your honors, and may it please the court that I present to you today the report, Ryan Watson is court-appointed amicus in support of appellate's position. I'd like to reserve two minutes for rebuttal time, please. Thank you. The question here is whether the president is the proper respondent. Section 3192 specifically singles out the president when it establishes a custodial obligation for him to protect extraditees from being held for offenses outside the extradition warrant. And the entire thrust of Mr. Day's petition here is a challenge to the president's failure to properly carry out that custodial obligation. It therefore makes sense for the president to be the respondent, rather than the warden in Indiana who has nothing to do with Section 3192. It is well established in the Supreme Court precedent and in this court's decisions that there are numerous exceptions to the immediate custodian rule. And those apply in a variety of circumstances where petitioners are challenging something other than their present physical confinement. What a petitioner places himself within an exception to the... What else is he challenging besides his present physical confinement? What other remedy does he seek than relief from confinement? So he is challenging the president's failure to properly carry out his custom... No, no, no, no, don't tell me what he's challenging right now. Tell me what other relief he's seeking other than relief from present confinement. So, as an initial matter, in this appeal, the court doesn't need to ultimately resolve the merits of his claim or the particular remedy... You might not answer my question. No, I'm happy to answer your question as well, Your Honor. The remedy that I'm advocating here is most closely analogous to what happened in National Treasury Employees Union v. Nixon, which is the case where this court evaluated the president's actions for conformity with the statute. It held that the plaintiffs had a statutory right to get a pay raise put into effect by the president. Well, they were seeking a pay raise. He doesn't have any pay. Therefore, he's not seeking a pay raise. What is it he is seeking other than relief from confinement? So, I'm advocating a... In National Treasury Employees Union, it was a declaratory... No, not National Treasury. Before Tim, there had never been a National Treasury Employees Union. Okay, declaratory... Tell me what he's seeking, if anything, other than relief from confinement. So, he's seeking a declaratory relief from the court stating that the president has a duty to protect him from being held for aiding and abetting, which is outside of the extradition warrant. My view is that if a court were to enter such an order, then the president would have some discretion in response to that as to how exactly he remedies the 3192 violation that occurred here. So, there are a variety of things that we mentioned in our brief as examples of what the president might do. That includes pardon, commutation, or perhaps the president would even consult with Mexico to determine the severity of the violation in their view. And it's even theoretically possible that the president would conclude that the error here was harmless, which is why it's not going to necessarily lead to the invalidation of his conviction. He's not challenging the trial court judge's entry of a conviction or a sentence. He's challenging what the president failed to do here, and the relief could lead to the invalidation of his conviction, but would not... If those offenses, the non-mutual and the non-specific, were not the basis of his conviction, isn't any such violation moot? And there may be a violation, but isn't it moot? So, Mr. Day's argument is that aiding and abetting was an offense that was not included... That's a means of committing an offense. That's not the offense itself. Well, so that goes to the merits of Mr. Day's claim, which I think in the 3192 context, the question of whether aiding and abetting is a separate offense needs to be evaluated from the perspective of the sending state, which here is Mexico. And no court yet has addressed the question in Mr. Day's proceedings as to whether Mexico would view aiding and abetting to be a separate offense. And, in fact, Mr. Day submitted an amicus brief as an attachment to his habeas petition below of a Mexican legal scholar who takes the position that aiding and abetting is not recognized by Mexico. That would be something that if this court determines that the president is the proper respondent and remands for further proceedings, the district court would have to get into the question of whether Mexico views aiding and abetting as a separate offense. It's not something you have to get into here. What do you do with the fact that he was not convicted of aiding and abetting? So I take the position that he was convicted of aiding and abetting. The government proposed an aiding and abetting instruction and advocated it for the charge. But there are lots of things proposed in instructions that don't result in a conviction of the thing proposed. They simply are explaining to the jury, here's the way we analyze what's before you. He wasn't convicted of aiding and abetting. So the district judge in the Eastern District of Virginia gave the aiding and abetting instruction, so it wasn't just proposed, it was given. What was he convicted of? He was convicted of several counts, wire fraud, conspiracy to commit wire fraud, conspiracy to commit money laundering, and conspiracy for a smuggling charge. But there was an aiding and abetting component to each of those that was the basis. Yes, because they're part of the means of achieving those wrongful ends, right? This court has recognized that under U.S. law, aiding and abetting is a means of committing the underlying offense. But here, that's why I'm drawing the distinction for Mexican law. The district judge gave an aiding and abetting instruction that was general, it was applicable to all of the relevant counts. And in the closing argument, actually, the government in the trial really hammered home the facts that it alleged were critical to the aiding and abetting theory it had. Its aiding and abetting theory, as the government explained it, was that Mr. Day essentially got others to do the dirty work for him and to send, in particular, the allegedly fraudulent emails. And then at closing argument, the government really hammered home that point, and the jury got an aiding and abetting instruction. And so, I think that... To prove the substance of offense. Again, that would have to be a... You were appointed counsel. Yes, I was indeed. The Second Circuit's decision in Perusian and the Eighth Circuit's decision in Jetter are both cases that stand for the proposition that when you're evaluating whether a 3192 violation, well, those are specialty cases, but I'm analogizing to them here. They evaluate whether the violation has occurred from the perspective of the sending state. Because a main purpose of 3192 and specialty is to ensure that the extraditing process of the sending state is not abused. Do we give no credence to our sister circuit? They've addressed this issue precisely, the Fourth Circuit, in this case. To be sure, in the direct appeal, the Fourth Circuit determined whether Mr. Day's specialty claim based on the U.S.-Mexico extradition treaty was valid. But it did not address 3192. It didn't mention 3192. So, I don't think that the Fourth Circuit actually addressed the specific issue here, which is properly brought in habeas, rather than on the direct appeal. In the Fourth Circuit, when it did the specialty analysis under the treaty, it was doing so for U.S. law purposes and did not evaluate whether aiding and abetting was a separate offense for the purpose of Mexican law, which is the way that it should be conducted in these proceedings for 3192 purposes. But you agree, I guess, that if we see this as a case in which the claimant is merely trying to overturn the conviction, you can't prevail, right? It's certainly true that 2255 is the ordinary means to challenge the imposition of a conviction or sentence, but I would submit that's not what's happening here. And there are a variety of things that could happen if Mr. Day were to succeed on the merits here and the President were to take some sort of action. It might lead to the invalidation of his conviction, but not necessarily. And in that respect, I would just point you to footnote 7 of Heck v. Humphrey, which recognized that when harmless error analysis comes into play, it can disrupt what would otherwise be a cause-and-effect relationship between a subsequent court's ruling and the invalidation of an underlying conviction. So the fact that the President could theoretically conclude that the error here was harmless proves the point that it's not necessarily going to lead to the invalidation of his conviction. If there are no further questions, I'll reserve my remaining time for rebuttal. Thank you. Okay. Good morning. Good morning. May it please the Court. My name is Nick Coleman, and I represent the United States in this matter. The district judge in this case correctly determined that this was, in fact, a challenge to the underlying conviction of appellant, which should properly be brought under Section 2255 in the Court of Conviction. Appellant is, at bottom, arguing, even if he casts this as some failure on the part of the President, it's a failure of the President to protect him from allegedly illegal conviction. Whether it's under the rule of specialty, as embodied in the U.S.-Mexico Extradition Treaty, or some different version of specialty embodied in Section 3192, it is ultimately a challenge to the conviction, and it is a request for release from his confinement for that conviction in federal prison out in Indiana. That is, at bottom, a challenge to the conviction, and it needs to properly be brought under Section 2255. In fact, the appellant has already done that. He raised this claim first in direct appeal, and then he raised it in a 2255 motion before the Eastern District of Virginia. He didn't get the answer that he wanted, but that doesn't mean that he now gets to come to the District Court in Washington, D.C., and see if he can get a different answer to that same question, simply by posing it as some sort of failure on the part of the President. I do want to address one point that amicus positive first in the reply brief, and it's positive again here today, the idea that the President, somehow that this question isn't fully presented because the President himself might find the error harmless. I haven't heard of any case in which the President was authorized to review a conviction for harmlessness, and in some sense, if that were true, in other words, if the error were in fact harmless, it's hard to see how the President violated his duty in the first place, because after all, at that point, what it means is that the conviction was not obtained in violation of any federal law. Do you actually agree with the argument that 3192 imposes a custodial duty? We don't, Your Honor, and I think one of the sort of oddities of this case, or if there is some sort of custody exercised by the President under 3192, it is exercised at this point on his behalf by the federal warden who holds him at this point physically in Indiana. And at that point, if that's the custody being challenged, then the immediate custodian is the warden and the petition is not properly here. I do think one of the oddities of Amicus's argument is that if the President is the custodian separately from any sort of confinement in prison, he would also be the custodian of any state prisoner. And at that point, then essentially what Amicus would be arguing is that a state prisoner similarly situated to appellant would be allowed to ask the President to come here to this courthouse and defend state conviction's legality, and the state wouldn't even be a party to that action. I think, again, this is not ultimately a challenge to any duty of the President under Section 3192. It is ultimately a challenge to the legality of the conviction. And I do want to take issue with one thing that Amicus argues here today, which is the idea that somehow this question was never presented before the Fourth Circuit. In fact, appellant did raise Section 3192 in his very first specialty-related filing, which he made before he was sentenced. So he cited it before. He's also relied heavily on Rauscher, which is the Supreme Court's decision which construes the immediate predecessor to Section 3192. So I don't think that any of these specialty-related doctrines here, in other words, whether or not the extradition warrant authorized by Mexico permitted conviction, that that was somehow not presented before the Fourth Circuit. But even if we assume that it wasn't, that doesn't mean that appellant couldn't have raised this claim in the Eastern District of Virginia via a Section 2255 motion. And I think it's interesting that the Mexican legal opinion that Amicus is citing to today was first presented in that litigation. It was first presented during his direct appeal. It was attached as part of a brief before the Supreme Court in review of the direct appeal, and then it was resubmitted as part of the 2255 proceedings. So, again, this was a claim that appellant could have raised under Section 2255. And so what that means is that there's no particular reason why the district court in Washington, D.C. is the only court that could consider some of these questions. In fact, the question of whether the conviction was illegal is one that can certainly, and in fact under 2255, must be considered by the court of conviction. And that's precisely to avoid the situation where the district court of Washington, D.C. would be issuing a decision that conflicts not only with decisions of the Eastern District of Virginia but with the Fourth Circuit. I'm not aware of any situation in which a federal district court has been permitted essentially to countermand or review a federal appeals court's decision on the same question in the same case. And that, again, is just one of the procedural oddities that is created by the appellant's claim and by Amicus's formulation of it here. Because of that, we respectfully submit that the district court's decision here to find that there was no jurisdiction and to find that it simply wasn't able to entertain this claim should be affirmed. Unless there are any additional questions, again, we would ask that the judgment be affirmed. Thank you. Thank you, Mr. Coleman. We'll give you two minutes if you need it. Thank you, Your Honor. Just a few quick points on rebuttal. When an extraditee arrives in the United States, the President takes custody over him and thereafter has to exercise that custody in certain ways that are spelled out in 3192. A challenge to the President's failure to do so, for example, a challenge to his failure to provide safety, security, transportation, or to protect the extraditee from being held for appearances outside of the extradition warrant, is a challenge to the manner in which the President is exercising that custody. The government mentioned today that the warden in Indiana would be exercising the 3192 custody on behalf of the President. I disagree with that, and it's notable that in the government's brief, it pointed to all of the delegations that it could find of 3192 responsibility. None of them had to do with the warden. Nonetheless, today he's being held by the warden as the immediate custodian. Yes, for the purpose of his custody pursuant to his convictions and sentence, but there's a separate custody under 3192 that the President had when he took custody of Mr. David Wright. Excuse me? No, it's an ongoing custodial relationship. If you look at the text of 3192, it actually makes clear that the President has responsibility that extends for a reasonable time after the sentence has been served. Now, the reason that that exists in the statute is so that the extraditee can have a reasonable period of time to get back to the country that he came from. The President's going to keep him safe and secure during that time period. But it's an ongoing custodial relationship that begins when he arrives in the United States and continues all the way until a reasonable amount of time thereafter. And my point about the delegation to the warden is that there is no delegation to the warden, and there's no delegation of the President's duty to protect extraditees from being held for offenses outside the extradition warrant. For those reasons, I would urge the Court to reverse and remand so that Mr. Day can press his 3192 claim against the President if there are no further questions. Thanks very much. Thank you. Thank you, Mr. Watson. You're welcome. We know that you were appointed to represent the appellant, and the Court appreciates your assistance. Thank you. My pleasure.
judges: Brown, Edwards, Sentelle